**Wes BIEBER and Tanya Bieber, Husband and Wife, Plaintiffs,**

v.

**ASSOCIATED COLLECTION SERVICES, INC., Defendant.**

**No. 84–1621–K.**

United States District Court, D. Kansas.

April 3, 1986.

Erich M. Shultz, Dodge City, Kan., for plaintiffs.

Craig Kennedy, Kassebaum & Johnson, Wichita, Kan., for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the Court on cross-motions for summary judgment. The plaintiffs allege the defendant, in attempting to collect a debt which plaintiffs owed to Dodge City Regional Hospital, violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* Specifically, plaintiffs claim: (1) defendant's statements that plaintiffs' wages could be garnished and the extent to which they could be garnished were in violation of § 1692e(4); (2) defendant's representation that legal action would be commenced against plaintiffs if the debt was not paid was in violation of §§ 1692e(5) and 1692d; (3) defendant's inquiry as to whether plaintiffs had filed bankruptcy after learning plaintiffs were represented by an attorney violated §§ 1692c(a)(2) and 1692d; and (4) defendant's representations after commencement of this action that defendant was not an assignee of the account misled plaintiffs in violation of § 1692e. Plaintiffs assert there are no material facts in issue and that they are entitled to judgment as a matter of law.

Defendant agrees there are no genuine issues of material fact, but alleges that plaintiffs' claims must fail as a matter of law and that defendant is entitled to summary judgment.

After hearing arguments by counsel and taking this matter under advisement, the Court has now determined defendant's motion for summary judgment will be granted and plaintiffs' motion denied. The reasons are set forth below.

Defendant Associated Collection Services, Inc. (ACS) is a "debt collector" as that term is defined in 15 U.S.C. § 1692a(6). On December 23, 1983, Dodge City Regional Hospital turned over to ACS an account in plaintiffs' names, to be collected by ACS on a 30% contingency basis. The account showed a delinquent balance due of $2,753.20. On December 31, 1983, ACS sent plaintiffs the following form letter:

Your creditor has referred your account to our collection agency for *immediate* collection.

[Lists customer number, name of creditor, debtor account number, principal, and amount due].

This is a demand for payment *in full* today.

On January 11, 1984, a representative of the defendant contacted Mrs. Bieber on the telephone and advised her that wage garnishment could be used to collect the account. Plaintiffs allege the defendant's representative also told her that 75% of her wages could be garnished. Defendant denies making this statement and acknowledges that only 25% of wages may legally be garnished.

On January 25, 1984, defendant mailed plaintiffs the following form letter:

OFFICIAL NOTICE

TAKE NOTICE–YOUR FUTURE
CREDIT IS AT STAKE

Your account has been assigned to this office for immediate collection. Unless we receive payment in full immediately, legal action may be filed against you and all other responsible parties. Remit or call above telephone number now.

On February 1, 1984, a representative of defendant again contacted Mrs. Bieber by phone and she advised him to call her attorney. The representative then inquired if plaintiffs were filing a petition in bankruptcy. No further contact was made concerning this account and it was returned to the creditor (Dodge City Regional Hospital) on March 5, 1984. It is ASC's normal practice to return an account to the creditor if it has been unable to collect after six months. Dodge City Regional Hospital has since instituted legal action against the Biebers to collect the debt.

On March 20, 1984, defendant received a second account from the Dodge City hospital in plaintiffs' names with a delinquent balance of $1,407.12. This account was also to be collected by ACS for the creditor on a 30% contingency basis. On March 31, 1984, and on April 6, 1984, defendant sent form letters to plaintiffs identical to those sent in connection with the first account. On May 17, 1984, defendant sent the following form letter:

NOTICE OF PENDING
INVESTIGATION

In fairness to you, we remind you for the last time that you have not corresponded with us regarding the above account. Sometimes drastic measures are taken to collect accounts which could have been avoided with the debtor's cooperation. We are proceeding with a thorough and complete investigation concerning your financial background.

This investigation will list all property, occupation, employment, and financial resources, etc., so that our client will be in a position to bring this claim to an early conclusion.

On June 15, 1984, plaintiffs received another form letter from defendant, which read:
URGENT!
UNLESS THIS ACCOUNT IS PAID *IN FULL AT ONCE* LEGAL ACTION AGAINST YOU WILL BE RECOMMENDED TO OUR CUSTOMER

Your Lack of Cooperation Has Caused This Decision. . . .

On July 20, 1984, plaintiffs received a letter from an attorney, Carl Feldhamer, of Denver, Colorado, advising them that he had been retained by ACS regarding collection of plaintiffs' debt to Dodge City Regional Hospital. The attorney's letter stated in part:

[ACS] has requested that I file suit on their behalf unless the account is paid in full or satisfactory arrangements are made within the next five days.

On August 27, 1984, plaintiffs received an interoffice memo from ACS to ACS–Legal Counsel, giving counsel permission to commence legal action against plaintiffs in five days. The letter stated that ACS's client (Dodge City Regional Hospital) had given them permission to garnish plaintiffs' wages. Stamped on the front of the letter was: "Direct questions regarding this letter to: Carl Feldhamer & Associates, P.C. . . ."

According to defendant, this account has since been returned to Dodge City Regional Hospital, and the hospital has instituted a lawsuit against plaintiffs. Plaintiffs have not denied this, therefore the Court will accept it as true.

On March 8, 1985, plaintiffs filed an amended complaint setting forth nine counts. The pretrial order filed on January 27, 1986, narrowed plaintiffs' contentions to five counts as follows: (1) defendant falsely represented that wage garnishment could be used to collect the debt; (2) defendant falsely represented that 75% of plaintiffs' wages could be seized by garnishment; (3) defendant falsely represented that defendant would commence legal proceedings against plaintiffs on the debt;

(4) defendant engaged in abusive conduct toward Tanya Bieber in a telephone conversation after defendant was advised that plaintiffs were represented by an attorney; and (5) defendant made additional false representations after commencement of this action by denying its status as assignee of the accounts.

Defendant addressed each of the plaintiffs' pretrial contentions in its motion for summary judgment, wherein it denied liability on each point. However, in the plaintiffs' motion for summary judgment, the following additional issues were raised by plaintiffs: (1) defendant violated the FDCPA by falsely representing that communication from defendant came from an attorney; (2) defendant violated the same Act by use of false representations or deceptive means to attempt to collect a debt; and (3) defendant violated the Act by the use of false representations as to the legal status of the debt.

■ As each of these new issues is outside the confines of the pretrial order, and there has been no subsequent modification, the plaintiffs are bound by their contentions in the pretrial order and the Court need not consider these additional issues. F.R.Civ.P. 16(e).

■ A party who moves for summary judgment bears the burden of demonstrating there is no genuine issue as to any material fact. *Williams v. Borden, Inc.*, 637 F.2d 731 (10th Cir.1980). In determining whether this burden has been met, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). The Court may discover questions of material fact even though both parties, in support of cross-motions for summary judgment, have asserted that no such questions exist. *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591 (N.D.Ga.1982). Thus, the Court can resolve legal issues raised by the parties on cross-motions for summary judgment only if it has no doubt that the relevant facts are beyond dispute.

The FDCPA was enacted in 1977 in response due to widespread national concern over abuses by some debt collectors. It was designed "to eliminate abusive practices, not disadvantage ethical debt collectors, and promote consistent state action." S.Rep. No. 382, 95th Cong., 1st Sess. 7, U.S.Code Cong. & Admin.News 1977, pp. 1695, 1701. The Act expressly prohibits many harassing, deceptive, and unfair debt collection practices, including the use of obscene language or threats of violence, impersonation of government officials, misrepresentation of a consumer's legal rights, and simulation of court process. In addition to such specific prohibitions, the Act in general terms prohibits any harassing, unfair or deceptive collection practices. This allows courts, where appropriate, to proscribe other improper conduct which has not been specifically addressed.

Plaintiffs first contend defendant's representation to them that wage garnishment could be used to collect the debt was false and misleading. 15 U.S.C. § 1692e(4) prohibits a debt collector from representing that nonpayment of a debt will result in garnishment *unless* such action is lawful and the debt collector or creditor intends to take such action. State law controls whether garnishment is lawful in a given situation.

K.S.A. 60–2310 is the Kansas statute governing garnishment of wages. Subsection (d) provides that if a creditor "sells or assigns" an account to a collection agency, neither the creditor nor the assignee will be entitled to the benefits of wage garnishment. If, in the instant case, the hospital *assigned* the accounts to defendant, then defendant's representations violated § 1692e(4).

■ The term "assignment" is not defined in the statute. Some light is cast by the prior statute, which was amended to its present form in 1979, and which denied garnishment if the creditor "sells or assigns his accounts ... *or sends or delivers the same to any collection agency ...*" (Emphasis added.) "Sends or delivers" was deleted from the current statute.

Therefore, the legislature seemingly intended that wage garnishment should be prohibited only if the creditor completely relinquishes ownership and control of the account. On the other hand, mere placement of an account with a collection agency for collection where ownership and control remain with the creditor is no longer intended to preclude wage garnishment. The 1979 Kansas Attorney General's opinion is in accord with this interpretation:

> By its amendment in Section 5 of 1979 Substitute for Senate Bill No. 376, which takes effect on July 1, 1979, K.S.A. 1978 Supp. 60–2310(d) will preclude the use of wage garnishment only in those situations where a creditor makes a legal assignment of a debtor's account to a collector or collection agency. Such prohibition will no longer extend to those situations where a creditor utilized a collection agent or agency to collect the debtor's account, but retains ownership and control thereof.

In *Patrons State Bank & Trust Co. v. Shapiro*, 215 Kan. 856, 528 P.2d 1198 (1974), the Kansas Supreme Court held that an assignment passes *all* of the assignor's title or interest to the assignee, and divests the assignor of all right of control over the subject matter of the assignment. In *State Inv. Co. v. Cimarron Ins. Co.*, 183 Kan. 190, 326 P.2d 299 (1958), the Kansas Supreme Court noted that an assignment becomes effective only upon the mutual assent of the assignor and the assignee to the assignment.

█ The only evidence before the Court on this issue are the affidavits of Henry Swayze, ACS's vice president, and Mark Fisher, patient accounts manager for the hospital. Both affiants swore that no assignment was made nor was an assignment intended to be made. The accounts were simply placed with ACS for collection purposes, but the hospital retained all rights of ownership and control of the accounts. Plaintiffs have not produced any evidence to the contrary. Therefore, it is an uncontroverted fact that the hospital retained ownership of the account at all times. Accordingly, there was no "assignment" as that term is used in K.S.A. 60–2310(d). De-

fendant is entitled to summary judgment on the issue of whether its referral to the possibility of wage garnishment violated § 1692e(4).

█ In their complaint, plaintiffs claim that an ACS employee represented to Mrs. Bieber during a phone conversation that 75% of her husband's wages could be withheld by garnishment. K.S.A. 60–2310 allows only 25% of wages to be garnished. 15 U.S.C. § 1692e prohibits a debt collector from making any false, deceptive, or misleading representations to the debtor. Because defendant's employee denies making this statement (he claims he said "25%"), a factual issue exists on this point. However, as plaintiffs failed to assert this issue in their motion for summary judgment or to list it in their statement of uncontroverted facts, plaintiffs appear to have waived this claim. But, even if plaintiffs have preserved this claim, and even if defendant's employee did say "75%", defendant is entitled to summary judgment under the provisions of 15 U.S.C. § 1692k(c), which provides a defense to a violation of the Act where the violation was unintentional and resulted from a bona fide mistake. Specifically, § 1692k(c) provides: "A debt collector may not be held liable in any action brought under this title if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

Defendant has submitted an affidavit from an ACS employee, Rodney Hotz, who spoke with Mrs. Bieber about the possibility of wage garnishment. He denies having said that 75% of plaintiffs' wages could be garnished. He further swears that *if* he made such a statement, it was completely unintended and he knew the legal limit on wage garnishment was 25%, as he had been educated on wage garnishment restrictions by ACS.

It is this sort of "misstatement" that subsection (c) was designed to protect. In *Baker v. G.C. Services Corp.*, 677 F.2d 775

(9th Cir.1982), the court held that § 1692k(c) is virtually identical to the bona fide error defense under the Truth in Lending Act which has uniformly been held to protect only unintentional clerical errors. *See Turner v. Firestone Rubber Co.*, 537 F.2d 1296, 1298 (5th Cir.1976). This misstatement by an employee of ACS is such a "clerical error"—especially when ACS had done all it could to educate its employees on their legal confines. Defendant is entitled to summary judgment on this claim.

Plaintiffs next contend that defendant violated the Act by representing it could commence legal action against plaintiff on the debt. Section 1692e(5) prohibits a debt collector from threatening to take any action that cannot legally be taken or that is not intended to be taken. Section 1692d prohibits the debt collector from engaging in any conduct designed to harass, oppress, or abuse the debtor.

In connection with both plaintiffs' first and second accounts, defendant mailed a form letter to plaintiffs which stated in part, "Unless we receive payment in full immediately, legal action may be filed against you." In connection with plaintiffs' second account, defendant sent a form letter to plaintiffs on June 15, 1984, which stated, "Unless this account is paid in full at once, legal action against you will be recommended to our customer." Plaintiffs received a letter from ACS's counsel on July 20, 1984, advising them that ACS requested that suit be filed if the debt was not paid. On August 27, 1984, plaintiffs received an interoffice memo from ACS to ACS's legal counsel, giving permission to commence legal proceedings against plaintiffs unless the debt was paid.

Suit *has* been filed against plaintiffs by Dodge City Regional Hospital rather than by ACS.

■ Plaintiffs now claim these letters from defendant to plaintiffs indicated that defendant had the authority to take legal action, and would take legal action, and as such amounted to threats to take action which could not legally be taken and was not intended to be taken. From the record, it appears defendant recommended legal action to the creditor, as suit has been filed by the creditor. Therefore, the June 15 letter which spoke of recommending legal action to "our customer" was accurate and not misleading.

The July 20 letter came not from defendant but from an attorney, and it simply advised the plaintiffs that defendant had requested suit be filed if the debt was not paid—it did not say suit *would* be filed; therefore it was not a threat. Likewise, the interoffice memo did not say legal action *would* be taken, only that permission had been given to the legal counsel to take such action by ACS and the hospital. Both letters were true—were not threats—and were not intended to mislead the plaintiffs.

■ In *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir.1985), the court noted the § 1692e(5) issue is simply whether or not the debt collector *intended* to take the action threatened. Thus, subsection (5) requires proof of a fact which amounts to a per se violation of § 1692e. In this case, there has been no violation of subsection (5) because the threatened action—filing of a lawsuit—has been taken by defendant's client. It makes no difference that the hospital filed the suit rather than ACS.

Moreover, defendant's conduct was not intended to harass or abuse within the meaning of § 1692d. In *Jeter*, the court held that a threat to take legal action was not, as a matter of law, conduct designed to harass, oppress, or abuse for purposes of § 1692d. This was true, the court held, even when the "threats" were viewed from the perspective of a consumer whose circumstances made him relatively more susceptible to harassment. Likewise, in the instant case this Court finds that ACS's statements regarding filing of a lawsuit were not intended to harass, oppress or abuse, as a matter of law. Therefore, summary judgment will be granted to defendant on this claim.

Plaintiff next contends that defendant's question to Tanya Bieber as to whether she had filed bankruptcy, after having been advised plaintiffs were represented by an attorney, violated the Act. Section

1692c(a)(2) provides that a debt collector may not communicate with a debtor about a debt after the debt collector knows the debtor is represented by an attorney with respect to such debt.

On February 1, 1984, defendant phoned Mrs. Bieber in connection with collection of the first account. Mrs. Bieber advised defendant to contact her attorney. Defendant then inquired whether the Biebers were planning to file a petition in bankruptcy. That was apparently the end of the conversation and no further contacts were made in connection with that debt. Defendant has filed the affidavit of its vice president, Henry Swayze, wherein he swore to ACS's legitimate business interest in knowing whether the debtor intends to file bankruptcy, as ACS does not want to waste time, effort and money in attempting to collect debts from a bankrupt debtor.

■ While it probably would have been a better practice for defendant to have hung up the phone after learning plaintiffs were represented by an attorney, this one additional question—a legitimate business inquiry—was not so extensive as to have been the kind of additional "communication" prohibited by subsection c(a)(2). Although there are no cases on point, it seems c(a)(2) was designed to prevent repeated phone calls and letters directly to the debtor after the debt collector knows that person to be represented by an attorney. This did not happen in the instant case.

■ Nor was ACS's question designed to harass or abuse plaintiffs in violation of § 1692d. That section prohibits a debtor's tender sensibilities only from oppressive and outrageous conduct. Some inconvenience or embarrassment to the debtor is a natural consequence of debt collection. *See Jeter v. Credit Bureau, Inc.*, 760 F.2d at 1179; *Dawson v. Associated Financial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974). ACS's inquiry was not oppressive or outrageous. Accordingly, defendant is entitled to summary judgment on this claim.

■ Plaintiffs' final contention is that defendant's representations after commencement of this action, denying its status as an assignee, were false and misleading in violation of § 1692e. A claim arising from a representation made by ACS *after* commencement of this lawsuit, long after defendant had ceased attempting to collect the debt, does not state a cause of action under the FDCPA.

■ If plaintiffs are claiming the use of the word "assign" on a form letter sent in connection with both accounts was false and misleading, this argument lacks merit. That letter was simply to notify plaintiffs that the hospital had placed the accounts with defendant for collection. Use of the word "assign" in the letter was in no way misleading to plaintiffs and simply does not represent the type of conduct the FDCPA was enacted to prevent. Therefore, defendant is entitled to summary judgment on this claim.

IT IS ACCORDINGLY ORDERED this 3 day of April, 1986, that defendant Associated Collection Services, Inc. should be and is hereby granted summary judgment as to the entirety of plaintiffs' claims, and plaintiffs' motion for the same is denied.