**Frank R. BEATTIE and Louise A. Beattie, Plaintiffs,**

v.

**D.M. COLLECTIONS, INC. and K.M. DeLacy, Defendants.**

Civ. A. No. 90–177 MMS.

United States District Court, D. Delaware.

Jan. 3, 1991.

O. Randolph Bragg of UAW–GM Legal Services Plan, Newark, Del., for plaintiffs.

Phebe S. Young of Bayard, Handelman & Murdoch, P.A., Wilmington, Del., for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This case was brought by plaintiffs Frank and Louise Beattie against defendants D.M. Collections, Inc. and K.M. De-Lacy for violations of the Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692 *et seq.* ("FDCPA"). Defendants have moved for summary judgment, and plaintiffs have cross-moved for partial summary judgment on the merits, reserving the issue of damages for trial.[1] The court has jurisdiction

---

1. Defendants argue that plaintiffs' cross-motion should be disallowed because it was filed after the date set for filing of case dispositive mo- tions. Because plaintiffs' motion will allow the court to grant final judgment as to any issue which may be decided solely as a matter of law,

pursuant to 15 U.S.C.A. 1692k and 28 U.S.C.A. § 1331.

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

When the movant has carried its burden under Rule 56(c), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted) (footnote omitted). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both *genuine* and *material*. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). A dispute over facts is "material" if, under the substantive law, it would affect the outcome of the suit. *Id.* at 248, 106 S.Ct. at 2510. A factual dispute is "genuine" if a reasonable jury could return a verdict for the non-movant. *Id.* The non-moving party must produce more than a mere scintilla of evidence to successfully oppose summary judgment. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989). Any inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing summary judgment. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)).

■ "The filing of cross-motions for summary judgment does not require the Court to grant summary judgment for either party." *Krupa v. New Castle County*, 732 F.Supp. 497, 506 (D.Del.1990) (citing *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987)). This is because each party may base its motion on different legal theories involving different material facts. *Id.* at 506. Further, different reasonable inferences may be drawn from the same facts. When there are no issues of fact and no conflicting inferences, the court may render summary judgment as a matter of law.

■ Determination of whether a violation of the FDCPA has occurred involves a two-step process. First, the court must interpret the statute, if necessary. Second, there must be a determination of whether defendants violated the statute as interpreted by the court. *See United States v. ABC Sales & Service, Inc.*, 590 F.Supp. 561, 569–70 (D.Ariz.1984) (memorandum opinion). The first step of the process involves the court in statutory construction. The United States Court of Appeals for the Third Circuit has noted that statutory construction is a question of law, and as such, is "peculiarly appropriate for independent judicial assessment." *Dunat v. Hurney*, 297 F.2d 744, 746 (3d Cir.1961) (quoting *O'Leary v. Brown–Pacific–Maxon, Inc.*, 340 U.S. 504, 508, 71 S.Ct. 470, 472, 95 L.Ed. 483 (1951)). Accordingly, statutory construction is a proper subject for summary judgment. *See generally Americans Disabled for Accessible Public Transportation v. Skinner*, 881 F.2d 1184, 1191 n. 6 (3d Cir.1989); *Jordan v. Kent Recovery Services, Inc.*, 731 F.Supp. 652, 656 (D.Del. 1990).

## FACTS

The following is an account of the collection activities underlying plaintiffs' claim as they are set forth in the summary judgment record. Other facts concerning the operations and procedures followed by defendants will be discussed where relevant. Defendant Kathleen DeLacy is the president and owner of D.M. Collections, Inc., a debt collection agency specializing in dental and medical accounts. Deposition of Kathleen DeLacy at 7, 10 (Dkt. 21) (cited hereinafter as "DeLacy dep. at ——"). D.M. Collections received assignment of an account

plaintiffs' cross-motion for summary judgment will be allowed.

by Wilmington Orthopedics Consultants. The information provided by Wilmington Orthopedics on a computer printout included the name of the debtor as Frank Beattie, the debtor's address as 137 W. Ablemorle Ave., Lansdowne, PA 19050, debtor's telephone number as (302) 654–8379, and debtor's age as 74 years old. The computer printout also gave debtor's social security number. DeLacy dep. at Exh. A. Upon receipt of the assignment, D.M. Collections, in accordance with its standard practice, generated and mailed a collection letter to Mr. Frank Beattie at the Lansdowne, Pennsylvania address. That letter was returned with the notation "Return to Sender— Moved Left No Address." DeLacy dep. at 23–24.

The next collection attempt on the part of D.M. Collections consisted of an August 21, 1989 telephone call placed by Ms. Anne Francia, an employee of defendant, to the telephone number listed on the computer printout, wherein Ms. Francia left a message to return her call. DeLacy dep. at Exh. F; Deposition of Anne Francia at 12–13 (Dkt. 21) (cited hereinafter as "Francia dep. at __"). A "Mr. Beattie" returned the call on August 22, 1989 and stated that illness currently prevented him from working and that he hoped to return to work within a month. DeLacy dep. at Exh. F; Francia dep. at 14. Francia told Mr. Beattie that she would "get back to him." Francia dep. at 14.

On August 24, 1989, the same individual, identified as "Mr. Beattie," with whom Francia has previously spoken telephoned Francia. The individual requested the address listed on the account. Upon being informed that the address listed was the Lansdowne address, Mr. Beattie informed Francia that the Lansdowne address was the former address of his son, Frank R. Beattie, and indicated that the correct debtor was his son. Francia dep. at 15. Mr. Beattie stated that he was not aware of his son's current address or telephone number, but provided Francia with the telephone number of his son's wife, plaintiff Louise A. Beattie, at her place of employment. *Id.*

On September 5, 1989, Francia reached Louise Beattie by telephone at her place of employment. Francia dep. at 17; Deposition of Louise A. Beattie at 3 (Dkt. 21) (cited hereinafter as "L. Beattie dep. at __"). When informed of the debt, Louise Beattie indicated some puzzlement because she did not recognize the doctor's name and because she assumed her husband's medical insurance paid all such bills. Francia dep. at 17; L. Beattie dep. at 4. Louise Beattie stated that she would investigate the matter with her husband and contact Francia afterward. Francia dep. at 17; L. Beattie dep. at 4–5. Louise Beattie telephoned Francia later that same afternoon and informed her that the debt did not belong to her husband.

According to both Francia and defendant DeLacy, DeLacy then spoke with Louise Beattie.[2] DeLacy testified that Louise Beattie provided her with plaintiff Frank R. Beattie's social security number. DeLacy compared this with the numbers provided by Wilmington Orthopedics and learned that the number did not match. DeLacy gave Louise Beattie the address on the printout, which Mrs. Beattie identified as her former address. Louise Beattie informed DeLacy that the debt must belong to her father-in-law. DeLacy dep. at 30. DeLacy informed Louise Beattie that she would verify the information with Wilmington Orthopedics. DeLacy dep. at 30–31. DeLacy then contacted Wilmington Orthopedics and verified the information. DeLacy dep. at 31. She also made a notation in the file that plaintiffs Frank R. and Louise Beattie should not be contacted until the matter was clarified. DeLacy dep. at 34 & Exh. F.

On September 6, 1989, plaintiff Frank R. Beattie went to Wilmington Orthopedics to

**2.** Louise Beattie testified that Francia responded by providing her with information including her husband's age and social security number, which Louise Beattie described as "all the right information to identify [her husband]." L. Beattie dep. at 5–6. Francia and DeLacy, however, testified that upon being informed that Louise Beattie's husband was not the debtor in question, Francia put Louise Beattie on hold and turned the account over to defendant Kathleen DeLacy. Francia dep. at 17–18; DeLacy dep. at 30.

clarify the matter. Wilmington Orthopedics verified to Frank R. Beattie that he was not in fact the debtor. Deposition of Frank R. Beattie at 8–9 (Dkt. 21) (cited hereinafter as "F. Beattie dep. at __"). At Frank R. Beattie's request, an employee of Wilmington Orthopedics telephoned DeLacy and explained that plaintiff was not the debtor. F. Beattie dep. at 10; DeLacy dep. at 34. The employee then turned the telephone over to Frank R. Beattie, who proceeded to berate DeLacy. F. Beattie dep. at 9, 12; DeLacy dep. at 31. DeLacy put a notation in the file that the plaintiffs were not to be contacted again regarding this debt. DeLacy dep. at Exh. F. Defendants D.M. Collections and DeLacy did not contact plaintiffs after September 6, 1989. At the request of plaintiffs' former attorney, DeLacy sent the attorney a written statement dated September 25, 1989 to the effect that collection efforts from plaintiffs had ceased. Complaint at Exh. A (Dkt. 1).

Plaintiffs have never discussed the incident with Frank R. Beattie's father, Frank Beattie. F. Beattie dep. at 17.

DISCUSSION

*The Fair Debt Collection Practices Act*

The Fair Debt Collection Practices Act, 15 U.S.C.A. §§ 1692 *et seq.* ("FDCPA" or "the Act"), is intended "to eliminate abusive debt collection practices by debt collectors [and] to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged...." 15 U.S.C.A. § 1692(e). The Act applies only to debt collectors and makes it unlawful for debt collectors to use abusive tactics while collecting debts for others.

Plaintiffs allege that defendants violated several provisions of the FDCPA in the course of their collection activities for Wilmington Orthopedic. The alleged violations will be discussed individually. Defendants do not dispute that D.M. Collections is a debt collector subject to the requirements of the Act. Rather, defendants assert that as a matter of law the collection activities against the Beatties did not violate any provision of the Act.

1. Alleged Failure To Include Debt Collection Warning In All Communications As Required By 15 U.S.C.A. § 1692e(11)

■ Plaintiffs assert that defendants committed three violations of 15 U.S.C.A. § 1692e(11) by failing to disclose that defendants were attempting to collect a debt and that any information obtained would be used for that purpose as required in each debt collection communication by subsection 1692e(11). Plaintiffs allege that defendants failed to make this disclosure in the two conversations with Louise Beattie on September 5, 1989 and in the conversation with Frank R. Beattie on September 6, 1989.

In order to determine whether a violation of subsection 1692e(11) has occurred, the court must first determine whether each conversation was a "communication" within the meaning of 15 U.S.C.A. §§ 1692a(2) & 1692e(11), and second, if the conversation was a communication, whether the communication violated subsection 1692e(11).

It is unclear from the face of the Act whether contact with the debt collector which is initiated by the putative debtor qualifies as a "communication" requiring disclosure under subsection 1692e(11). Although the language of subsection 1692e(11) implies that only contact initiated by the debt collector is considered a communication requiring disclosure, 15 U.S.C.A. § 1692e(11) (requiring the disclosure in "all communications made to collect a debt or to obtain information about a consumer...."), subsection 1692a(2) defines "communication" seemingly without regard to the initiator of contact as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

It may be argued that so long as the disclosure is given in the initial contact with the debtor, there is no need to make the disclosure in subsequent contacts because the putative debtor has already received his warning. The courts are divided on the issue of whether subsection 1692e(11) requires disclosure on follow-up contacts made by the debt collector. *Com-*

pare *Pressley v. Capital Credit & Collection Service, Inc.*, 760 F.2d 922 (9th Cir. 1985) (disclosure need not be made in follow-up communications) *with Seabrook v. Onondaga Bur. of Medical Economics*, 705 F.Supp. 81, 87 (N.D.N.Y.1989) and cases cited therein (disclosure mandated in follow-up contacts as well as initial communications).

Plaintiffs deny that the disclosure required by section 1692e(11) was given them by defendants in any communication with regard to the debt. F. Beattie dep. at 18; L. Beattie dep. at 15–16. Francia asserts, however, that she did give the required disclosure at least in her initial telephone communication with Louise Beattie. Francia dep. at 17. Francia's assertion is in part supported by Louise Beattie, who stated that the woman with whom she spoke "said that my husband had incurred a debt with a doctor and they were calling to collect this debt." L. Beattie dep. at 3. Frank R. Beattie has no specific recollections of exactly what defendant DeLacy said to him during their September 6, 1989 telephone conversation. F. Beattie dep. at 12. Consequently, there is a genuine issue of material fact as to whether the required disclosure was given in each communication.

The court need not determine whether subsection 1692e(11) required that the warning be given in all three telephone conversations because defendants have asserted a defense of bona fide error pursuant to 15 U.S.C.A. § 1692k(c), which states:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

Defendants have offered evidence that D.M. Collections maintains procedures intended to ensure compliance with the FDCPA. DeLacy dep. at 9–10, 13–15, 26; Francia dep. at 6–7, 12, 20–21. The employees of defendant D.M. Collections, including Francia and defendant DeLacy, pe-

riodically attend seminars which provide training to aid them in complying with the FDCPA. Francia dep. at 6–7; DeLacy dep. at 9–10, 14–15. In addition, D.M. Collections employees, including Francia and DeLacy are provided with various editions of the *Fair Debt Collection Practices Act* manual. DeLacy dep. at 13–15; Francia dep. at 6–7. There is also a three-page memorandum entitled "Statement of Collection Policy for Fair Debt Collection Practices Act." Francia dep. at 7; DeLacy dep. at 14.

With respect particularly to compliance with the disclosure requirement of section 1692e(11), there was a posted 5″ × 8″ card with the following language: "This is an attempt to collect a debt and any information obtained will be used for that purpose" over every telephone at the D.M. Collections office. DeLacy dep. at 26. Standard procedure at D.M. Collections requires that employees recite the language on the card immediately after introducing themselves when conducting collection business by telephone. DeLacy dep. at 26; Francia dep. at 9. Both DeLacy and Francia refer to this procedure as "citing the memo." DeLacy dep. at 26; Francia dep. at 9, 20. Defendants assert that the memo was cited in conversation with the Beatties and any failure to do so was unintentional.

Clerical errors and misstatements of this kind are the kinds of "violations" of the Act for which section 1692k(c) was intended to provide a defense. *Bieber v. Associated Collection Serv., Inc.*, 631 F.Supp. 1410, 1415–16 (D.Kan.1986) (bona fide error defense available for statement by collection agency employee that there was possibility that 75% of debtor's wages could be garnished when the legal limit on wage garnishment was 25% where employee stated that such statement if made was unintended that he was aware of the 25% limit and had been educated on wage garnishment by debt collector).

Plaintiffs have failed to come forward with any evidence regarding the procedures in place at D.M. Collections for preventing violations of section 1692e(11) or the intention of Francia, DeLacy, and D.M.

Collections as to the alleged failure to give the disclosure. When the movant has carried its burden under Rule 56(c), the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356 (citation omitted) (footnote omitted). The non-moving party must produce more than a "mere scintilla" of evidence to successfully oppose summary judgment. *See Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir. 1989). In this instance, plaintiffs have failed to come forward with even a "mere scintilla" of evidence or to create even "some metaphysical doubt" as to the procedures maintained by D.M. Collections or the intent of defendants regarding the disclosure requirement of section 1692e(11) beyond their valid assertions that they were not given the warning. Consequently, the court finds that any failure by defendants to make the disclosure required by 15 U.S.C.A. § 1692e(11) during the communications with the Beatties was bona fide error, and the court will grant summary judgment for defendants on this issue.

2. Alleged Failure To Provide the Validation Notice Required by 15 U.S.C.A. 1692g(a)

■ Plaintiffs next allege that defendants violated the Act by failing to comply with 15 U.S.C.A. § 1692g(a), which requires that:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Defendants do not dispute that they failed to send such a validation notice to the Beatties. Rather, defendants argue that because all collection activity ceased as of September 6, 1989—only one day after the initial communication with Louise Beattie—they were not required to send the validation notice.[3]

Congress designed the FDCPA, and in particular subsection 1692g(a), to "eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." S.Rep. No. 382, 95th Cong., 1st Sess. 4 *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1699. The sending of the validation notice provides the consumer with information which enables him or her to determine whether he or she in fact owes the debt in question. In a case wherein a debt collector has initiated debt collection activities against the wrong person, the collector's compliance with subsection 1692g(a) is intended to put an end to the erroneous dunning at an early point. Another goal of the Act is to protect consumers from unnecessary anxiety and agitation as a result of collection activities. *See generally* 15 U.S.C.A. § 1692 (stating purposes of the Act); *id.* § 1692c(a)(1) (prohibiting communication

---

**3.** Defendants' alternative argument that they were not required to send such notice because they did not have plaintiffs' correct address is unpersuasive. Defendants concede that in the event collection activity had continued, they would have been required to send the notice to plaintiffs unless all of the relevant information was provided in the initial contact.

with consumer at unusual time or place); *id.* § 1692d (prohibiting harassive, oppressive, and abusive conduct in connection with collection of a debt); 8 K. Labine & B. Bash, *Banking Law* §§ 155.01–.02 at 155-1–7 (1989). The question presented by the case now before the court is whether a collector is required to send the validation notice when it discovers that it has begun collection activities against the wrong individual within five days of the initial contact.

The court holds that subsection 1692g(a) does not require a validation notice to be sent when a debt collector discovers it has initiated collection against the wrong person *provided* the collector informs the consumer within five days of the initial communication that collection activity against him/her was mistaken and will cease. Once the collector has recognized its error and ceased collection activity, the purpose of subsection 1692g(a)'s validation notice to eliminate the dunning of the wrong person is answered. So long as the consumer has been informed that the error has been recognized and corrected, he will be prevented from suffering further anxiety as a result of the erroneous collection effort. *See generally Bieber v. Associated Collection Serv., Inc.*, 631 F.Supp. 1410, 1417 (D.Kan. 1986) (holding that a claim arising from a representation made long after collection activity ceased and FDCPA suit was filed did not state a cause of action under the Act).

Although it may be inferred from the record that Frank R. Beattie knew as of the September 6, 1989 telephone call that defendants were aware that he did not owe the debt in question, there remains an issue of fact as to whether defendants actually informed the Beatties, prior to the letter sent by DeLacy to the plaintiffs' attorney dated September 25, 1989, that collection activities against them would cease. The summary judgment record does reflect that DeLacy put a notation in the file that Frank R. and Louise Beattie were not to be contacted in connection with this debt. However, nowhere in the summary judgment is there an explicit indication that DeLacy so informed the Beatties prior to her September 25, 1989 letter. DeLacy's letter to the Beatties' attorney dated September 25, 1989, was written more than five days after the initial communication. Consequently, there is a genuine issue of material fact with regard to whether the plaintiffs were informed that defendants had recognized the error and ceased collection activity within five days of the initial contact. The cross-motions for summary judgment will be denied on the alleged violation of 15 U.S.C.A. § 1692g(a).

3. Alleged Attempt To Collect An Amount Which Is Not Expressly Authorized By Contract Or Permitted By Law In Violation Of 15 U.S.C.A. § 1692f(1), and Alleged False Representation Of The Character, Amount, Or Legal Status Of Any Debt In Violation Of 15 U.S.C.A. § 1692e(2)(A)

Plaintiffs' allegations that defendants violated subsections 1692f(1) and 1692e(2)(A) are based upon the fact that defendants mistakenly attempted to collect from individuals who were not legally obligated to pay the debt.[4] The Beatties assert that defendants' failure to clarify certain discrepancies in the information received from the creditor, Wilmington Orthopedics, such as the fact that the debtor's address was in Pennsylvania but the telephone number had a Delaware area code, constituted negligence subjecting them to liability under these two subsections of the Act. Plaintiffs further argue that the fact that the debtor was listed as a 74-year-old man should have alerted defendants that something was amiss when the first Frank Beattie with whom they communicated stated the debt was that of his son.

Subsection 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such

---

**4.** At oral argument, plaintiffs' counsel conceded that subsections 1692f(1) and 1692e(2)(A) are pleaded in the alternative.

amount is expressly authorized by the agreement creating the debt or permitted by law." By its own terms, then, the subsection addresses the abusive practice of collecting an amount greater than that which is owing. S.Rep. 382 95th Cong., 1st Sess. 4 *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1698. The subsection has been litigated in the courts in the context of debt collectors who have charged interest or service charges which were not expressly provided for as a part of the debt either by agreement or force of law. *See, e.g., West v. Costen,* 558 F.Supp. 564, 581 (W.D.Va.1983). There has been no allegation that defendants have attempted to collect an amount different from the amount owed to Wilmington Orthopedics. Defendants' attempts to collect from the wrong individuals are better characterized as going to the character or status of the debt rather than the amount owing. Consequently, the court finds that subsection 1692f(1) is inapplicable in this context. Defendants' motion for summary judgment on the alleged violation of 15 U.S.C.A. § 1692f(1) will be granted.

Subsection 1692e(2)(A) prohibits the "false representation" of "the character, amount, or legal status of any debt." As stated above, defendants' representations that the debt was owed by plaintiffs go to the status or character of the debt and consequently may implicate subsection 1692e(2)(A). The term "false representation," however, would seem to imply that the subsection prohibits intentional conduct. The FDCPA was intended to protect consumers from abusive and unfair debt collection practices *"without imposing unnecessary restrictions on ethical debt collectors."* S.Rep. 382 95th Cong., 1st Sess. 2–3 *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696 (emphasis added). Consequently, there is room within the Act for ethical debt collectors to make occasional unavoidable errors without subjecting themselves to automatic liability.

■ In determining whether a statement is false, deceptive or misleading so as to constitute a violation of any of the provisions of 15 U.S.C.A. § 1692e, the court

should apply the standard of the "least sophisticated debtor." *Swanson v. Southern Oregon Credit Serv., Inc.,* 869 F.2d 1222, 1227 (9th Cir.1988); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1175 (11th Cir.1985); *Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480, 1486–87 (M.D.Ala. 1987); *United States v. Central Adjustment Bureau, Inc.,* 667 F.Supp. 370, 375 (N.D.Tex.1986). In terms of plaintiffs' allegation that defendants violated subsection 1692e(2)(A), the court must determine whether the least sophisticated of consumers would have been deceived, misled, or harassed by such practices. *Kimber,* 668 F.Supp. at 1487. The "least sophisticated debtor" standard is an objective standard. The question is not whether these plaintiffs were deceived or mislead, but rather whether an unsophisticated consumer would have been mislead. *Wright v. Credit Bureau of Georgia, Inc.,* 548 F.Supp. 591, 600 (N.D.Ga.1982), *on reconsideration,* 555 F.Supp. 1005 (N.D.Ga.1983).

■ Ordinarily, this is the kind of question which would be answered by the jury. Nevertheless, Congress has indicated a desire for the courts to lend structure to the confines of practices prohibited by the Act. *See* S.Rep. No. 95–382, 95th Cong., 1st Sess. 4, *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1698; *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1179 (11th Cir.1985). The court finds that debt collectors may be found in violation of subsection 1692e(2)(A) for mistakenly dunning the wrong individuals when they fail to exercise reasonable care in ascertaining the facts, such as by relying upon information on which a reasonable person would not have relied.

■ Generally, a debt collector may reasonably rely upon information provided by a creditor who has provided accurate information in the past. *See generally Howe v. Reader's Digest Ass'n, Inc.,* 686 F.Supp. 461, 467 (S.D.N.Y.1988). Whether defendants reasonably relied on the information supplied by Wilmington Orthopedics is a question of fact for trial. Likewise, whether it was reasonable for defendants to rely upon the statement of Frank Beat-

tie that the debt was owed by his son is a factual question that must be decided at trial. The cross-motions for summary judgment will therefore be denied on the issue of whether defendants violated 15 U.S.C.A. § 1692e(2)(A).

4. Alleged Violation Of 15 U.S.C.A. § 1692e(5) By Threatening To Take Any Action That Cannot Legally Be Taken Or That Is Not Intended To Be Taken

 Plaintiffs base their assertion of a violation of subsection 1692e(5) on the fact that during one of the September 5, 1989 telephone calls, Francia informed Louise Beattie that plaintiffs would be taken to court if the debt were not paid. *See* Plaintiffs' Answering Brief at 25–26 (Dkt. 23). Defendants deny that Francia in fact made such a statement. Consequently, there is a material issue of fact. Because plaintiffs' allegations include questions of statutory construction, the court will consider the legal questions presented by the alleged violation of subsection 1692e here so as to provide guidance to the parties as to the matters which must be litigated at trial.

Plaintiffs argue that since they were not obligated to pay the debt, no legal action could be taken against them. *Id.* Plaintiffs have not alleged that D.M. Collections did not intend to sue them at the time Francia made the statement. Consequently, plaintiffs rely on the part of the subsection prohibiting threats to take an action that cannot legally be taken.

 Even under the least sophisticated debtor standard, the mere threat to institute a lawsuit in and of itself does not constitute harassive, oppressive or abusive conduct. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1179 (11th Cir.1985); *Bieber v. Associated Collection Serv., Inc.,* 631 F.Supp. 1410, 1416 (D.Kan.1986). The question for the court is whether the lawsuit threatened by Francia was an action which could not legally be taken within the meaning of subsection 1692e(5).

Plaintiffs assert that the threatened lawsuit could not legally be taken because they had a valid defense, namely, that they were not the obligors. The court hesitates to construe the phrase "action that cannot legally be taken" so broadly as to sweep within its confines the availability of any valid defense to the obligation in question. Such a broad construction could place an undue burden on ethical debt collectors. However, the threatening of a lawsuit which the debt collector knows or should know is unavailable or unwinnable by reason of a legal bar such as the statute of limitations is the kind of abusive practice the FDCPA was intended to eliminate. *See Kimber v. Federal Financial Corp.,* 668 F.Supp. 1480, 1487 (M.D.Ala.1987). Likewise, the Act was designed to prevent debt collectors from threatening suit against persons whom the collector knows or should know are not legally liable for a debt. Consequently, defendants can be held liable for violation of subsection 1692e(5) if they knew or should have known that plaintiffs were not obligors on the debt. Such a construction holds debt collectors to a standard of reasonableness; defendants "should have known" that plaintiffs were not responsible for the debt if defendants failed to exercise reasonable care in determining whether plaintiffs in fact owed the debt in question. As was the case with subsection 1692e(2)(A), resolution of defendants' liability under subsection 1692e(5) turns on whether defendants acted reasonably in relying upon the information provided by Wilmington Orthopedics and the elder Frank Beattie. In light of the questions of fact as to whether Francia ever uttered the threat to bring a lawsuit and the reasonableness of defendants' reliance on the information provided by Wilmington Orthopedics and the elder Frank Beattie, summary judgment will be denied on the issue of defendants' liability under 15 U.S.C.A. § 1692e(5).

5. Alleged Violation Of 15 U.S.C.A. § 1692d By Engaging In Conduct The Natural Consequence Of Which Is To Harass, Oppress Or Abuse Any Person In Connection With The Collection Of A Debt

Subsection 1692d prohibits conduct the natural consequence of which is to "harass,

oppress, or abuse any person in connection with the collection of a debt." Although defendants' conduct does not fall within the specific types of conduct proscribed by subsections 1692d(1)–(6), Congress has authorized the courts to fill in the gaps left by the statute. S.Rep. No. 95–382, 95th Cong., 1st Sess. 4, *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1698.

 Subsection 1692d prohibits only oppressive and outrageous conduct. *Bieber v. Associated Collection Serv., Inc.*, 631 F.Supp. 1410, 1417 (D.Kan.1986). It is not intended to shield even the least sophisticated recipients of debt collection activities from the inconvenience and embarrassment that are natural consequences of debt collection. *Id.* In fact, it would be inconsistent with the language of subsection 1692d to construe the subsection to forbid conduct that is not intended and does not naturally tend to harass, oppress or abuse. *Wright v. Credit Bureau of Georgia, Inc.*, 548 F.Supp. 591 (N.D.Ga.1982), *on reconsideration*, 555 F.Supp. 1005 (N.D.Ga. 1983). Subsection 1692d does not preclude debt collectors from making non-abusive statements designed to encourage voluntary payment. *See Dixon v. United Adjusters, Inc.*, C.A. No. 79–179 (D.Ore. Feb. 19, 1981) (slip opinion) (available on LEXIS, Genfed lib., Courts file).

 Plaintiffs have alleged only that defendants contacted the wrong individuals with regard to the debt. Plaintiffs have not alleged that defendants engaged in persistent and continuing demand of payment accompanied by increasingly harsh threats, *Florence v. National Systems*, C.A. No. C82–2020A (N.D.Ga. Oct. 14, 1983) (slip opinion), or that defendants were abusive and insulting or that defendants implied plaintiffs ignored mail or lacked common sense to handle their financial affairs. *Dixon v. United Adjusters, Inc.*, C.A. No. 79–179 (D.Ore. Feb. 19, 1981) (slip opinion) (available on LEXIS, Genfed lib., Courts file); *Harvey v. United Adjusters*, 509 F.Supp. 1218, 1221 (D.Or.1981). Nor has there been any allegation that defendants intended their conduct to harass or oppress plaintiffs.

When it passed the FDCPA, Congress had in mind such abusive practices as:

> obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

S.Rep. No. 95–382, 95th Cong., 1st Sess., *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696. The court finds as a matter of law that plaintiffs have alleged no conduct on the part of defendants which would naturally tend to harass, oppress or abuse. Consequently, defendants' motion for summary judgment on their liability under 15 U.S.C.A. § 1692d will be granted.

6. Alleged Violation Of 15 U.S.C.A. § 1692e(10) By Using Any False Representation Or Deceptive Means To Collect Or Attempt To Collect Any Debt

 Subsection 1692e(10) prohibits the use of "any false representation or deceptive means to collect any debt...." Plaintiffs have alleged no false or deceptive conduct beyond the fact that defendants demanded payment from persons who were not responsible for the debt and the alleged threat of a lawsuit. The court has already found that defendants' statements that the debt was owed by plaintiffs may best be characterized as a representation concerning the status or character of the debt. Consequently, the conduct complained of has been specifically addressed by subsection 1692e(2)(A). The alleged threat of a lawsuit is conduct specifically addressed by subsection 1692e(5). Because plaintiffs have failed to allege any conduct not specifically addressed elsewhere in the Act, defendants' motion for summary judgment will be granted as to their liability under subsection 1692e(10).

## CONCLUSION

Defendants' motion for summary judgment will be granted in part and denied in

part. The court finds as a matter of law that defendants did not violate 15 U.S.C.A. §§ 1692d, 1692e(10), 1692e(11) & 1692f(1). There exist genuine issues of material fact with regard to the claims asserted under 15 U.S.C.A. §§ 1692e(2)(A), 1692e(5) & 1692g(a). An order will issue conforming to this Opinion.