**Theresa A. PEARCE, Plaintiff,**

v.

**RAPID CHECK COLLECTION, INC., Defendant.**

**No. Civ. 89–5058.**

United States District Court, D. South Dakota, W.D.

April 19, 1990.

Raymond Degeest, Rapid City, S.D., for plaintiff.

Michael J. Williams, Rapid City, S.D., for defendant.

## MEMORANDUM OPINION

BATTEY, District Judge.

This case concerns alleged violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 (Act). Plaintiff has brought suit alleging four such violations by the defendant, requesting actual damages, $4,000 statutory damages ($1,000 for each alleged violation of the Act), and plaintiff's

costs and attorney's fees.[1] The parties have submitted this case on stipulated facts, and have allowed this Court to find all remaining conclusions of fact and law, based on these facts, and the memorandums of law submitted by both parties, in lieu of a jury trial.

Jurisdiction is invoked under 15 U.S.C. § 1692, and the case is properly before this Court.

### FACTS

The pertinent facts, as set forth in the stipulation, are as follows. The plaintiff, Theresa A. Pearce, wrote two checks to a local grocery store, Albertson's, on November 26, 1986, and January 11, 1988, for which there were insufficient funds in her Rapid City Teachers Federal Credit Union account to cover the amounts. The first check, # 732, was written in the amount of $13.29. The second, # 2221, was in the amount of $17.27. Both debts were sold by the grocery to the defendant collection agency, who then attempted to collect on the amount of the checks, plus service charges of $42.40 ($21.20 per check, for a total of $72.96).

Defendant first contacted the plaintiff on January 18, 1988, by letter, asking for this amount.[2] The second attempted contact was by certified letter to the plaintiff on February 16, 1988.[3] This letter was returned to the defendant unclaimed by the plaintiff.

With no response to the letters, the case was referred to the Rapid City Police Department on March 28, 1988, and a criminal complaint was filed against the plaintiff as to the check numbered 2221 for $17.27. On May 4, 1988, defendant was contacted by attorney Ron Brodowicz, who informed defendant by telephone that he represented plaintiff in the criminal proceedings, and that she was found not guilty in a court trial. He also offered to compromise the debt by having his client pay the defendant for the bad checks. The defendant did not respond to this offer. The defendant, also on May 4, called the state's attorney to find that the defense of the plaintiff was that the Rapid City Teachers Federal Credit Union had covered many prior overdrawn checks, so that the check should not have been returned unpaid.

The next contact was again a letter from the defendant, dated September 12, 1988, this time to both the plaintiff and her bank, threatening civil suit against both if the amount due was not paid.[4] It is from this

---

1. 15 U.S.C. § 1692k provides that a violation of the Act creates liability for (1) actual damages, (2) additional, court allowed damages not exceeding $1,000, and (3) the costs of the action, including attorney's fees.

2. The first letter reads as follows:

 Dear Theresa:
 We have received the following returned checks due to insufficient funds:
 Check # 2221 of 01–11–88 to Albertsons
 Check # 732 of 11–88–86 (sic) to Albertsons
 The total amount due is now $72.96. We must have payment by return mail.
 This is an attempt to collect a debt. Any information obtained will be used for that purpose. Unless you dispute the validity of any portion of this debt, in writing, to us within thirty days we will assume it to be valid. If you do dispute this debt as specified, we will send you copies of your check(s) and give you the name and address of the creditor. South Dakota statute allows a $21.20 service charge and sales tax per check. This is included in total due.
 Please present this notice at our office with payment in full. Our office hours are: 9:00 AM and 5:00 PM Monday through Friday. No per-

sonal checks or partial payments will be accepted. Make cashier's check or money order payable to: Rapid Check Collection.
 NOTICE: It is our policy to report unpaid checks to your local credit bureau. If necessary, and whenever possible, it is our policy to PURSUE CRIMINAL AND CIVIL PROSECUTION against checkwriters who do not promptly pay us for their bad checks.
 It was stipulated that this letter was in compliance with the Fair Debt Collection Practice Act, under which this suit was brought.

3. This letter was not included in the pleadings.

4. The September 12 letter reads as follows:

 Dear Sir:
 We recently acted for Albertsons in filing criminal charges against Theresa A. Pearce for an unpaid nsf check (# 2221 of 1/11/88 on account # 707230697200 for $17.27). Ms. Pearce raised the successful defense that your credit union had covered many overdrawn checks before this one so this check should not have been returned. Since the judge in this case agreed with Ms. Pearce, so we have been informed, we feel that we have no other option but to bring a civil

letter that all four alleged violations of the act arise.

Plaintiff's attorney gave notice to defendant of alleged violations of the Fair Debt Collection Practice Act on January 3, 1989, and a Civil Small Claims Action was filed by the defendants on April 6, 1989. That action has been stayed pending the decision in this case.

## DISCUSSION

### Purpose and History of the Act.

The Fair Debt Collection Practices Act was passed in 1977 in response to abuse by debt collection companies in collecting debts. "Its purpose is to protect consumers from a host of unfair, harassing, and deceptive debt collection practices without imposing unnecessary restrictions on ethical debt collectors." S.Rep. No. 95–382, cited in 1977 U.S.Code Cong. & Admin. News 1695, 1696. The legislation, aimed at collection agencies, prohibits specific practices including threats of violence, obscene language, the publishing of "shame lists," certain types of telephone calls, contacting a debtor in certain situations, making threats not capable of being carried out, or not intended to be carried out, overcollecting, and disclosing the debt to third parties. Other features include requiring the validation of debts, eliminating forum abuse, and furnishing form collection letters to creditors. See generally S.Rep. No. 95–382, reprinted at 1977 U.S.Code Cong. & Admin.News 1695.

### Communication with a Third Party.

 The first claim is made by the plaintiff under 15 U.S.C. § 1692c(b).[5] Plaintiff claims that the letter (see note 4) was a communication with a third party, in violation of the Act. The plaintiff does not, however, brief this aspect of the case. Regardless of this fact, the bank in this case can hardly be considered a third party. The House Report cited above states: "[A] debt collector may not contact third persons such as a consumer's friends, neighbors, relatives, or employer. Such contacts are not legitimate collection practices and result in serious invasions of privacy, as well as the loss of jobs." S.Rep. No. 95–382, reprinted at 1977 U.S.Code Cong. & Admin.News 1695, 1699. The letter in issue was sent to the same bank on which the bad checks were written, so there is no chance that the letter was used to embarrass the plaintiff, and no chance that an invasion of privacy or loss of employment could occur. See West v. Costen, 558 F.Supp. 564, 575 (W.D.Va.1983) (discussing third party contacts).

There was also a legitimate reason for the letter, as the defendant could reasonably have thought that the bank was at least partly liable for the money owed it. Negligence or mistake by the bank was in fact was the defense of the plaintiff at her criminal trial. To say that the bank is a third party is ignoring its possible involvement in the case, as being possibly liable, at least to the plaintiff, on the claim of the defendant.

### Representation of Plaintiff by Attorney.

 The second allegation is brought under 15 U.S.C. § 1692c(a)(2).[6] The claim

---

action against Ms. Pearce and your credit union if this matter is not settled by October 1. Including service charges, the total due for this check is $38.47.

**5.** 15 U.S.C. § 1692c(b) reads as follows:

(b) Communication with third parties—Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post-judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

**6.** 15 U.S.C. § 1692c(a)(2) reads as follows:

(a) Communication with the consumer generally—Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of a debt—

. . . . .

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can

by the plaintiff is that the defendant knew that the plaintiff was represented by an attorney, yet sent a letter directly to the plaintiff. The defendant argues that the plaintiff's attorney failed to respond to a communication from the debt collector within a reasonable amount of time, and also argues that it did not have knowledge of the fact that the plaintiff was represented. Both of these arguments could give rise to a defense under section 1692c(a)(2), but neither of these arguments can be valid given the facts as stipulated to.

The defense that the plaintiff failed to respond within a reasonable time fails because it was the defendant who should have responded to the phone call from plaintiff's attorney. The May 4, 1988, phone call, to which plaintiff's attorney was alleged not to have responded within a reasonable period of time, was actually initiated by the plaintiff's attorney. It was even an offer by the plaintiff to which the defendant did not respond. No bill, confirmation, or acceptance of that offer was sent to the plaintiff by defendant after the communication in question, so that there could be no failure to respond as the defendant alleges.

The second possible defense of lack of knowledge of whether the plaintiff was represented by an attorney also fails. As a part of the phone call of May 4, 1988, was the obvious and inescapable message that the plaintiff was represented by counsel. Not only did the attorney call after the criminal action had been concluded, but an offer was made on behalf of the plaintiff to settle the matter. Given the above circumstances, the letter sent by the defendant to the plaintiff and her bank was an attorney contact and hence a technical violation of the Act. *See, e.g., Bieber v. Associated Collection Serv., Inc.,* 631 F.Supp. 1410 (D.Kan.1986); *Harvey v. United Adjusters,* 509 F.Supp. 1218 (D.Or.1981). Under the facts, however, such violation is characterized as *de minimis.* It is not the type of conduct which the intent and purpose of the Act proscribes.

*Threat of Civil Suit.*

The third alleged violation is brought under 15 U.S.C. § 1692e(5).[7] Plaintiff claims that the threat of civil suit to the plaintiff and her bank was not intended to be followed through.

The threatened suit against the bank need not be dealt with as the plaintiff has no standing to raise any alleged violations which do not affect her.

The suit against the plaintiff was actually brought and, while not conclusively establishing defendant's intent at the time of the contact with plaintiff, nonetheless is evidence of the intent of the defendant to pursue litigation. Under the Act the plaintiff has the burden of showing that the defendant had no intent to bring the suit. *United States v. ACB Sales & Serv., Inc.,* 95 F.R.D. 316, 318 (D.Ariz. 1982). The Court finds that the burden has not been met. Plaintiff in this case has shown no facts which would support a conclusion that there was a lack of intent to follow through with the threat of litigation, and in the face of actual litigation, her allegation fails. *See Baker v. G.C. Serv. Corp.,* 677 F.2d 775 (9th Cir.1982); *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168 (11th Cir.1985).

*Harassment or Abuse by Defendant.*

The final alleged violation is brought under 15 U.S.C. § 1692d.[8] The letter is alleged to have harassed, oppressed, or abused the plaintiff in some

---

readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer; ...

**7.** 15 U.S.C. § 1692e(5) reads as follows:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the

foregoing, the following conduct is a violation of this section:

 • • • • •

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken....

**8.** 15 U.S.C. § 1692d reads in part as follows:

A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt....

manner. There is absolutely no basis upon which this Court can find such conduct. *Rutyna v. Collection Accounts Terminal, Inc.,* 478 F.Supp. 980 (N.D.Ill.1979) is inapposite. In *Rutyna,* there was a threat by the collection agency to "make an investigation" in the neighborhood of the debtor, and to "personally call" on the debtor's employer unless the debt was paid. In this case, the only threats which defendants made were ones which legally could be taken, and in fact were taken. There has been no violation of section 1692d.

### DAMAGES

Finding no substantive violation of the Act, the Court need not consider the damage provisions of 15 U.S.C. §§ 1692k(b)(1)[9] and 1692k(a).[10]

The clerk shall enter judgment dismissing the complaint without costs to either party.

---

**9.** The factors set out in § 1692k(b)(1) to determine the amount of liability due the plaintiff are the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional.

**10.** 15 U.S.C. § 1692k(a) reads in pertinent part as follows:

(a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

(1) any actual damage sustained by such person as a result of such failure;

(2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; ... and

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.