**Cassie A. HUBBARD, f/k/a Cassie Wickes, Plaintiff,**

v.

**NATIONAL BOND AND COLLECTION ASSOCIATES, INC., Defendant.**

**Civ. A. No. 90–275–JLL.**

United States District Court, D. Delaware.

April 2, 1991.

Sandra E. Messick of UAW Legal Services Plan, Newark, Del., for plaintiff.

Phebe S. Young of Bayard, Handelman & Murdoch, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Senior District Judge.

This is an action brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, by Cassie A. Hubbard, f/k/a Cassie Wickes, the plaintiff, against the defendant National Bond and Collection Associates. (Docket Item ["D.I."] 1). Discovery was completed on January 14, 1991 (D.I. 6), and the case is presently before the Court on the parties' cross-motions for summary judgment on the issue of liability. (D.I. 20 & 22). All briefs have been submitted by the parties (D.I. 21, 21A, 23, 26 & 27); therefore, the Court will now address the cross-motions for summary judgment.

### FACTS

Below, the Court has recited the relevant undisputed facts.

On October 24, 1988 the plaintiff Cassie Hubbard filed for bankruptcy under chapter 13 of the Bankruptcy Code. (D.I. 21A at A–18 & A–24). She filed with the assistance of Barbara James, Esq. of the UAW

Legal Services Plan ("UAW"). (*Id.* at A–8 & A–21A). As of that date, Cassie Hubbard was protected by the Bankruptcy Code's automatic stay which forbids "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(6). One of the debts listed in her bankruptcy petition was $957.15 owed to "G.C. Services" for items purchased at "Lowe's." (D.I. 23 at Defendant's Exhibit ["DX"] B). Apparently, the creditor should have been listed as "G.E. Capital Corp." Despite the automatic stay, on December 11, 1989 G.E. Capital referred the unpaid account of $957.15 to the defendant for collection. (D.I. 23 at 3). On the same date, the defendant mailed a computer generated collection letter to the plaintiff which appeared as follows:

NATIONAL BOND AND COLLECTION ASSOCIATES, INC.

P.O. BOX 2306

WILKES BARRE, PA. 18703

(717) 287–6023

12/11/89

CASSIE A. WICKES
120 KENMAR DR
NEWARK, DE 19713–0000
CREDITOR: G.E. CAPITAL CORP.—
2PL LOWE'S
BALANCE: $957.15 037912
YOUR DELINQUENT ACCOUNT HAS BEEN REFERRED TO THIS OFFICE FOR IMMEDIATE LIQUIDATION.
WE ARE, THEREFORE DEMANDING PAYMENT IN FULL NO LATER THAN,

12/21/89

YOUR FAILURE TO REMIT WILL RESULT IN FURTHER COLLECTION ACTION AND MAY EVENTUALLY RESULT IN THIS OFFICE RECOMMENDING TO OUR CLIENT THAT THEY CONSULT LEGAL COUNSEL FOR THE PURPOSES OF PROCEEDING WITH A LAWSUIT.
WE ARE OFFERING YOU THE COURTESY OF THIS LETTER BEFORE TAKING FURTHER ACTION.
YOURS TRULY,
TOM OLIVER
COLLECTION AGENT
WE ACCEPT VISA AND MASTER CARD. LIST YOUR ACCOUNT INFORMATION BELOW. ACCOUNT # ____-_____ EXPIRATION DATE __/__ AMOUNT $___ PLEASE RETURN THIS NOTICE WITH YOUR PAYMENT.
THIS DEBT WILL BE ASSUMED VALID UNLESS YOU NOTIFY OUR OFFICE WITHIN 30 DAYS DISPUTING THE DEBT OR ANY PORTION THEREOF. WE WILL THEN MAIL YOU VERIFICATION OF THE DEBT AND IF REQUESTED, THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR.
PLEASE TAKE NOTICE THAT NATIONAL BOND & COLLECTION ASSOC., INC. IS A DEBT COLLECTION AGENCY AND IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.
01

(D.I. 1; D.I. 23 at DX A). The defendant is concededly a debt collector within the meaning of § 1692a(6) of the FDCPA. (D.I. 21A at A–7). According to the defendant's business records, on December 15, 1989 the plaintiff contacted the defendant by telephone and notified it that she had filed for bankruptcy. (D.I. 23 at 4). The plaintiff does not deny that she made this phone call. At that point, the defendant ceased to communicate with the plaintiff and no further collection efforts were made. The only contacts between the parties were the original letter of December 11 and the telephone contact initiated by Cassie Hubbard on December 15. Subsequently, on January 3, 1990 Sandra E. Messick, Esq., a UAW attorney who was not involved with Cassie Hubbard's bankruptcy,[1]

---

1. Barbara James, Esq. was the UAW attorney representing Cassie Hubbard with respect to

sent the defendant a letter directing the defendant to cease communications with the plaintiff, provide verification of the debt, and provide the original debtor's name and address. (D.I. 21A at A–6). Ms. Messick further advised the defendant that the debt was disputed, but did not mention the bankruptcy. (*Id.*). On June 4, 1990 the plaintiff filed the present suit against National Bond and Collection Associates, Inc. (D.I. 1).

It is undisputed that prior to December 15, when Cassie Hubbard telephoned the defendant, the defendant did not know that Cassie Hubbard had filed for bankruptcy. It is disputed whether G.E. Capital, the creditor who referred the debt to the defendant, received notice of the bankruptcy.[2]

## DISCUSSION

By reason of the above facts, Cassie Hubbard claims that the defendant violated the FDCPA in four separate respects and that she is therefore entitled to statutory and actual damages under the statute. The four sections of the FDCPA allegedly violated by the defendant are:

1.  § 1692c.

    (a) —Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt—

    \* \* \* \* \* \*

    (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address ...

    § 1692e.

    A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the

following conduct is a violation of this section:

\* \* \* \* \* \*

2.  (2) The false representation of—(A) the character, amount, or legal status of any debt;

    \* \* \* \* \* \*

3.  (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

    \* \* \* \* \* \*

4.  (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

15 U.S.C. §§ 1692c(a)(2), 1692e(2)(A), (5) & (10). The Court will address these claims below.

### 1. *The Section 1692c(a)(2) Claim*

■ Whether Cassie Hubbard is entitled to recover under § 1692c(a)(2) of the FDCPA depends upon whether she can establish two facts. First, Ms. Hubbard must prove that prior to National Bond's mailing of the single collection letter, she was represented by an attorney with respect to the debt owed to G.E. Capital. Second, Ms. Hubbard must prove that prior to the defendant's sending of the collection letter, the defendant had "actual knowledge" that Ms. Hubbard was represented by an attorney with respect to the G.E. Capital debt. *See Pearce v. Rapid Check Collection, Inc.*, 738 F.Supp. 334, 338 (D.S. D.1990); *Bieber v. Associated Collection Services, Inc.*, 631 F.Supp. 1410, 1417 (D.Kan.1986); *Harvey v. United Adjusters*, 509 F.Supp. 1218, 1220–21 (D.Or.1981); FTC Official Staff Commentary § 805(a)(2), 53 Fed.Reg. 50,097 (1988), *hereinafter*, FTC Commentary. The plaintiff has failed to submit sufficient facts to meet her burden on summary judgment.

■ The plaintiff has done no more than show that a UAW attorney represented the plaintiff during the filing of her bankrupt-

---

bankruptcy matters. (D.I. 21A at A–21 & A–8). Sandra E. Messick, Esq., who is from the same UAW office, is representing Cassie Hubbard in this FDCPA case.

**2.** G.E. Capital never filed a claim in Cassie Hubbard's chapter 13 bankruptcy. (D.I. 15, DX A at 3).

cy petition. (D.I. 21 at 5). It is undisputed that National Bond was unaware of the plaintiff's bankruptcy, and at the very least, did not have a copy of the bankruptcy petition from which to discover the name of Cassie Hubbard's attorney. The plaintiff's argument is that the defendant should have discovered the bankruptcy and then sought a copy of the petition from which to discover the name of the attorney that represented Ms. Hubbard. This argument appears to suggest that some kind of "constructive knowledge" existed on the part of the defendant, and that "constructive knowledge" is sufficient for § 1692c(a)(2) purposes. The Court rejects this argument. *Accord,* FTC Commentary ("The creditor's knowledge that the consumer has an attorney is not automatically imputed to the debt collector.") Section 1692c(a)(2) requires "actual knowledge" and the plaintiff has not provided any facts that suggest the defendant actually knew Ms. Hubbard was represented by the UAW Legal Services Plan before the collection letter was sent.

■ Even if National Bond knew that the UAW had represented Cassie Hubbard during the filing of her bankruptcy, the Court doubts that this previous representation would have satisfied the requirement of § 1692c(a)(2) that the plaintiff be represented with respect to the debt in dispute. Barbara James, Esq. of the UAW assisted Cassie Hubbard in the filing of a bankruptcy petition more than one year before the events giving rise to the present cause of action. The fact that a debtor retained an attorney more than a year previously, for the specific task of filling out a bankruptcy petition, does not suggest that the same attorney has been continuously retained to represent the debtor in all matters with her creditors. The Court's conclusion that Ms. Hubbard's bankruptcy and her FDCPA suit are distinguishable and involve separate legal representations, is supported by the fact that different UAW attorneys represented Cassie Hubbard with respect to each matter. From the evidence provided by the plaintiff, it cannot be established that the UAW was retained by Cassie Hub-

bard with respect to the G.E. Capital debt, prior to the December 11 communication.

2. *The Section 1692e Claims*

■ Cassie Hubbard's § 1692e claims arise from essentially one fact: the defendant's attempt to collect a debt that was subject to the bankruptcy court's automatic stay. The Court however, for reasons discussed below, concludes that § 1692e of the FDCPA was not intended to penalize debt collectors for their failure to discover a debtor's prior bankruptcy. In the present case, there is no evidence that the defendant knew of Cassie Hubbard's bankruptcy, and therefore, to the extent that the plaintiff's claims are based upon National Bond's ignorance of the bankruptcy, they cannot be sustained.

Section 1692e prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. This language suggests to the Court that § 1692e was intended to prohibit only knowing or intentional misrepresentations by debt collectors. Black's Law Dictionary defines the terms "false representation," "false," "deception," and "misleading" as follow:

> FALSE REPRESENTATION. A representation which is untrue, wilfully made to deceive another to his injury.
> FALSE. In law, this word usually means something more than untrue; it means something designedly untrue and deceitful, and implies an intention to perpetrate some treachery or fraud.
> DECEPTION. The act of deceiving; intentional misleading by falsehood spoken or acted.
> MISLEADING. Delusive; calculated to lead astray or to lead into error.

Black's Law Dictionary 750, 748, 529 & 1193 (3d ed. 1933). The plain meaning of § 1692e is that only knowing and intentional conduct is punishable. This interpretation of § 1692e is consistent with the FDCPA's purpose and structure.

■ According to plaintiff's counsel, Cassie Hubbard has a cause of action under § 1692e because a debt collector must

investigate a debtor's financial background before contacting the debtor. This proposition is contrary to the intentions of Congress and the purpose behind § 1692g of the FDCPA. Section 1692g was intended to provide a means by which relevant information could be exchanged between the debtor and debt collector in a cost effective manner. Under § 1692g a debtor must be notified in writing that he can dispute the validity of a debt, or any portion of it, and demand verification of the debt's existence. 15 U.S.C. § 1692g(a). Through this process, the debt collector learns whether the debt is contested and the reasons, if any, for the debtor's refusal to pay. The statutory scheme of the FDCPA thus allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information. This is an important part of the FDCPA's statutory scheme. S.Rep. No. 382, 95th Cong., 1st Sess. 2 *reprinted in* 1977 U.S.Code Cong. & Admin.News 1695, 1696 (the FDCPA should function "without imposing unnecessary restrictions on ethical debt collectors.") & 1699; 15 U.S.C. § 1692(e). The plaintiff's contention that debt collectors must bear the entire burden of collecting information concerning debtors ignores the importance of § 1692g and the Congressional intent behind its enactment.

■■■ The exchange of information provided for by § 1692g, for present purposes, serves two relevant functions. First, the exchange of information between debtors and debt collectors ensures that debt collectors promptly receive relevant factual information concerning debtors so that unnecessary contacts between debt collectors and debtors can be minimized. *See Beattie v. D.M. Collections, Inc.*, 754 F.Supp. 383, 390–91 (D.Del.1991); S.Rep. No. 382, 95th Cong., 1st Sess. 4 *reprinted in* 1977 U.S. Code Cong. & Admin.News 1695, 1699. Contrary to the plaintiff's argument, Congress clearly did not intend to put the entire burden of avoiding unnecessary contacts on debt collectors. Second, this exchange of information provides debt collectors with "actual knowledge" of the facts relevant to their collection efforts. This is significant because only a knowing violation of § 1692e is actionable. Though a mistake of law is never a defense,[3] *Baker v. G.C. Services Corp.*, 677 F.2d 775, 779 (9th Cir.1982); *Rutyna v. Collection Accounts Terminal, Inc.*, 478 F.Supp. 980, 982 (N.D.Ill.1979), a mistake of fact may excuse conduct that would otherwise violate the FDCPA. After the validation procedure of § 1692g, a debt collector would have actual knowledge of the facts relevant to a particular debt and could be held liable under the FDCPA for any further debt collection efforts that violate the letter of the act. Therefore, under § 1692g, the debtor bears a responsibility to notify the debt collector of facts which the debt collector would not otherwise be aware. One such fact would be the existence of a bankruptcy.

In the present case § 1692g functioned as it was intended. Unaware that Cassie Hubbard had filed for bankruptcy, National Bond tried to collect a $957.15 debt from her. The collection notice contained the required written statement that Ms. Hubbard had a right to contest the debt. Ms. Hubbard promptly contacted National Bond, contested the debt, and notified it that she had filed for bankruptcy. At this point all debt collection efforts by the defendant ceased. The statutory scheme worked.

■■■ Allowing a debt collector, under limited circumstances, to send a single initial debt collection notice to a debtor without creating liability under the FDCPA does not undermine the automatic stay provisions of the Bankruptcy Code. The FDCPA was not enacted to enforce the Bankruptcy Code's automatic stay provisions; it was enacted "to eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). Automatic stays are adequately

---

**3.** While it is true that a debt collector's mistake of law is not a defense, a debt collector's good faith reliance on an FTC advisory opinion immunizes the debt collector from liability under the act even if the opinion turns out to be legally incorrect. 15 U.S.C. § 1692k(e).

enforced by the contempt power of bankruptcy courts and specific provisions of the Bankruptcy Code. *See, e.g., In re Sechuan City, Inc.,* 96 B.R. 37 (Bankr.E.D.Pa.1989); *Mercer v. D.E.F., Inc.,* 48 B.R. 562 (Bankr. D.Minn.1985); *see also, In re Miller,* 89 B.R. 942 (Bankr.M.D.Fla.1988) (permanent injunction after discharge of indebtedness is equally enforceable). Interestingly, § 362(h) of the Bankruptcy Code, as amended in 1984, provides for a private right of action for willful violations of an automatic stay. 11 U.S.C. § 362(h) (1984). The willfulness standard of § 362(h) would be undermined if the Court now recognized a private right of action under the FDCPA in which a defendant could be held strictly liable for a single unknowing violation of an automatic stay.

■ The "bona fide error" defense of § 1692k(c) is an affirmative defense unrelated to the issue of whether a plaintiff has proven a debt collector's actual knowledge of facts sufficient to sustain a cause of action under § 1692e. Section 1692k(c) states:

A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid such error.

15 U.S.C. § 1692k(c). Section 1692k(c) is an affirmative defense applicable to situations where a debt collector's violation of the FDCPA stems from an unintentional clerical error that occurred despite the maintenance of reasonable preventative measures. *Baker,* 677 F.2d at 779 (court reached above conclusion because § 1692k(c) is based upon a similarly interpreted section of the Truth in Lending Act, 15 U.S.C. § 1640(c)); *Bieber,* 631 F.Supp. at 1416. In contrast, the knowledge requirement previously discussed by the Court goes to whether the defendant violated the FDCPA in the first place. For example, in

the present case, Cassie Hubbard cannot establish that National Bond violated § 1692e because she cannot establish that National Bond was aware of her bankruptcy before it sent her the debt collection letter. If, on the other hand, National Bond did have prior knowledge of the bankruptcy, the defendant could then argue the affirmative defense that its violation was accidental. Under § 1692k(c), this affirmative defense would only be established if the violation arose from an inadvertent clerical error of a nature that is reasonably guarded against.[4] With this said, the Court will now address each claim separately.

a. Section 1692e(2)(A)

■ The plaintiff alleges that National Bond violated § 1692e(2)(A) because it attempted to collect a debt that was subject to the Bankruptcy Code's automatic stay. The argument appears to be that the defendant misrepresented that the debt was presently owed, and immediately collectible, when in fact, due to the stay, it was neither. This the plaintiff argues constituted a false representation of the character or legal status of the debt. The difficulty with the plaintiff's argument is that a debt collector's unknowing violation of an automatic stay does not transform an otherwise accurate collection letter into a "false representation" within the meaning of § 1692e. For the reasons stated above, the Court agrees with *Beattie,* 754 F.Supp. at 392–94, that a "false representation" under § 1692e(2)(A) requires that the misrepresentation be intentional.

b. Section 1692e(5)

■ The plaintiff's § 1692e(5) claim is that the defendant threatened to take action that could not legally be taken. Specifically, the defendant threatened to take "further collection action" against the plaintiff. But since the debt in question was covered by the Bankruptcy Code's au-

---

**4.** An example of such a clerical error would be, if after Cassie Hubbard had contacted the defendant to inform it that she had filed for bankruptcy, the defendant had then entered a nota-

tion on its computer that no further communications should be sent to Ms. Hubbard, but due to some failure in the computer, a second letter did in fact get sent to Cassie Hubbard.

tomatic stay, no collection efforts could legally be taken at the time the threat was made. These facts do not make out a claim under § 1692e(5). As the Court has already explained, the FDCPA was not intended to hold a debt collector strictly liable for its failure to discover a debtor's prior bankruptcy. Absent a showing that the defendant had knowledge of Ms. Hubbard's bankruptcy before the collection letter was sent, the plaintiff has no cause of action under the FDCPA's prohibition on threats to take action that cannot legally be taken.

#### c. Section 1692e(10)

Section 1692e(10) prohibits a debt collector from using false representations or deceptive means to collect a debt. 15 U.S.C. § 1692e(10). Whether a collection effort is deceptive depends upon whether a "least sophisticated debtor" would be deceived by the debt collector's efforts. *Jeter v. Credit Bureau, Inc.,* 760 F.2d 1168, 1177 (11th Cir.1985); *Baker,* 677 F.2d at 778; *Beattie,* 754 F.Supp. at 392; *Riveria v. MAB Collections, Inc.,* 682 F.Supp. 174, 178 (W.D.N.Y.1988); *Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864, 870 (D.N.D.1981). This standard is objective, *Beattie,* 754 F.Supp. at 392; *Bingham,* 505 F.Supp. at 870–71; *Wright v. Credit Bureau of Georgia, Inc.,* 548 F.Supp. 591, 599 (N.D.Ga.1982), *on reconsideration,* 555 F.Supp. 1005, 1007 (N.D.Ga.1983), and can be applied by the Court on summary judgment. In the present case, the plaintiff alleges that the defendant's collection letter was deceptive to a least sophisticated debtor because it "(1) misrepresented the legal status of the debt; and (2) falsely implied that further collection action would commence if payment not (sic) made within ten days upon the failure of immediate payment (sic)." (D.I. 21 at 16).

The first alleged deception by the defendant involved National Bond's attempt to collect a debt that was subject to the Bankruptcy Code's automatic stay. Here, the plaintiff once again argues that National Bond's attempt to collect the debt was in essence a misrepresentation of the debt's legal status. As before, this claim fails because no facts have been presented that suggest National Bond knew of Cassie Hubbard's bankruptcy before National Bond mailed its collection letter.

The other § 1692e(10) claim is that the defendant falsely suggested that further collection action would be taken if the debt were not promptly paid. This the plaintiff alleges was a deceptive means by which to collect a debt because, under the automatic stay, no collection efforts could be legally taken. Again, knowledge of the prior bankruptcy, by the defendant, is a necessary element of this claim for which the plaintiff lacks proof.

The issue of the bankruptcy aside, the plaintiff has presented no facts suggesting that the defendant's collection letter would "deceive" a least sophisticated debtor.

### CONCLUSION

When National Bond mailed Cassie Hubbard a collection notice on December 11, 1989 it was unaware that she had filed for bankruptcy. On December 15, 1989, Cassie Hubbard called the defendant, National Bond, and informed it that she had filed for bankruptcy. National Bond made no further collection efforts and ceased all communication with the plaintiff. On these facts, the defendant cannot be held liable under §§ 1692c(a)(2), 1692e(2)(A), (5), or (10) of the FDCPA. Therefore, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court will grant the defendant's motion for summary judgment on the issue of liability and deny the plaintiff's motion for summary judgment on the issue of liability.