David MOYA, Judy Moya, and Michael A. Ryans, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Thomas D. HOCKING and Asset Acceptance Corp., Defendants.

No. 1:97–CV–967.

United States District Court,
W.D. Michigan,
Southern Division.

May 19, 1998.

Phillip C. Rogers, Grand Rapids, MI, for Plaintiffs.

Murdoch J. Hertzog, Murdoch J. Hertzog Law Offices, St. Clair Shores, MI, for Thomas D. Hocking, Defendant.

Thomas F. Blackwell, Marilyn Nickell Tyree, Smith, Haughey, Rice & Roegge, PC, Grand Rapids, MI, for Asset Acceptance Corp., a Michigan corporation, Defendant.

## OPINION

QUIST, District Judge.

In this action, Plaintiffs David Moya and Judy Moya (the "Moyas") and Michael A. Ryans ("Ryans")[1] filed their class action complaint against Defendant Asset Acceptance Corp. ("AAC") and its attorney, Thomas D. Hocking ("Hocking"), alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o, and the Michigan Collection Practices Act, M.C.L. §§ 339.901–.920, 445.251–.258. Plaintiffs' claims arise out of Defendants' efforts to collect debts owed by Plaintiffs. Now before the Court are AAC's motion for summary judgment and Hocking's motion to strike class allegations and dismiss the complaint.

### Facts

AAC is in the business of purchasing bulk accounts receivable for value. At the time AAC purchases an account, it receives computer-generated data from the account seller regarding the dates of activity on the account, which AAC downloads into its system. The information enables AAC to determine whether the debt is within the statute of limitations.

In December 1995, AAC purchased the Moyas' account with Montgomery Ward, which then had an outstanding balance of $1,725.25. The information furnished by the seller stated: "OPEN DATE 06–23–88," "CHRG OFF AMT 1,725.05," "LAST PAY DTE00–00–00," "LST SLE DTE 12–23–89," and "TRAN DATE 02–20–92." (Def. AAC's Br. Supp. Mot. Ex. A.) The account information also stated "STATUTE IN." (Id.) AAC determined that the statutory accrual date for the debt was February 20, 1992, and that the debt was within the statute of limitations under Michigan law.[2] AAC began to report the debt to credit reporting agencies in December 1995, and attempted to collect the debt until June 1997, without success. During that time, the Moyas did not respond to AAC's letters or indicate that the debt was time-barred.

On June 23, 1997, AAC turned the Moya account over to Hocking, its attorney, for collection. Based upon the information furnished by AAC, Hocking determined that the debt was within the limitations period and filed suit in state court. The Moyas filed an answer in which they alleged that the debt was time-barred. On that basis, the Moyas filed a motion for summary disposition. AAC was unable to obtain evidence from Montgomery Ward showing that the debt was not time-barred in time to respond to the Moyas' motion, and the state court granted the motion and dismissed the case.

In August 1996, AAC purchased Ryans' account with Household Finance Company, which account then had an outstanding balance of $6,553.76. The information furnished by the seller stated: "LAST ACTIVITY DATE: 03/25/91," "NEXT DUE DATE: 03/25/91," "DATE OF OCCURRENCE: 03/25/91," and "DAYS DELINQUENT: 1962." (Id. Ex. B.) AAC determined from this information that the account was within the limitations period and attempted to collect the debt from Ryans. AAC began to report the debt to credit reporting agencies and commenced collection efforts. Ryans in-

---

[1]. The Court will refer to the Moyas and Ryans collectively as Plaintiffs.

[2]. The statute of limitations under Michigan law for collection of an account receivable is six years. See M.C.L. § 600.5807(8).

formed AAC that he was unemployed and unable to make payments, but he did not indicate that the debt may be time-barred. (Bradley Aff. ¶ 12, Def. AAC's Br. Supp. Mot.)

Unsuccessful in its collection efforts, AAC referred the account to Hocking. Hocking reviewed the information furnished by AAC, determined that the debt was enforceable, and filed suit in state court against Ryans. Ryans filed an answer to AAC's complaint alleging that the debt was barred by the statute of limitations. Hocking then stipulated to dismiss the case with prejudice because AAC was unable to obtain proof from the seller that the accrual date of the action was March 25, 1991.

### Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1871)).

### Discussion

 Plaintiffs allege in this case that AAC and Hocking violated the FDCPA by filing suit on, and reporting to credit reporting agencies, two debts that were barred by

the statute of limitations. AAC and Hocking contend that they are entitled to dismissal of, or summary judgment on, Plaintiffs' complaint on the basis of the bona fide error defense,[3] which precludes liability under the FDCPA if the collector proves

by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C. § 1692k(c). The bona fide error defense provides an exception to the strict liability imposed by the FDCPA. *See Russell v. Equifax A.R.S.*, 74 F.3d 30, 33–34 (2d Cir.1996) To establish that a violation occurred due to a bona fide error, a defendant must prove that: (1) "the violation was not intentional;" and (2) the violation occurred "notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Jenkins v. Heintz*, 124 F.3d 824, 834 (7th Cir.1997). It is not enough for a defendant to assert that he acted unintentionally. *See Green v. Hocking*, 792 F.Supp. 1064, 1066 n. 5 (E.D.Mich.1992) (mem.op.), *aff'd*, 9 F.3d 18 (6th Cir.1993). Proof that the defendant had in place "procedures reasonably adapted to avoid" the error is necessary. *Id.*

 AAC and Hocking have both submitted proof that they were unaware that the statute of limitations had run on both the Moyas' debt and Ryans' debt at the time the suits were filed. AAC's Executive Officer, Nathaniel F. Bradley IV ("Bradley"), testified by affidavit that in purchasing accounts, AAC relies upon computer-generated account information supplied by the seller which AAC downloads onto its own system. (Bradley Aff. ¶¶ 6–7, Def. AAC's Br. Supp. Mot.) The information furnished by the seller of the Moya account showed a statutory accrual date of February 20, 1992, and the information furnished by the seller of the Ryans account showed a statutory accrual date of March 25, 1991.[4] (*Id.* ¶¶ 10, 12.) Bradley

---

**3.** The Court notes that the argument presented by AAC and Hocking in support of their motions does not require a determination of whether efforts to collect a debt to which the debtor can raise the affirmative defense of a statute of limitations violated the FDCPA. Plaintiffs cite *Kimber v. Federal Financial Corp.*, 668 F.Supp. 1480 (M.D.Ala.1987) (mem.op.), in support of their

argument that efforts to collect a time-barred debt violate §§ 1692e and 1692f of the FDCPA. *See Kimber*, 668 F.Supp. at 1487. However, for purposes of the instant motion only, the Court only assumes, but does not and need not actually decide that the rationale of *Kimber* is correct.

**4.** Plaintiffs do not dispute that these dates, had they been correct, would not have presented a

confirmed that AAC relied upon this information in attempting to collect the debts. (*Id.* ¶ 14.) In his deposition, Bradley explained that the seller of the Moya account told AAC that "the trans date ... represented the last activity on the account, which would have been either a payment or a charge." (Bradley Dep. at 21, Def. ACC's Reply Ex. D.) Bradley also testified that "last activity date" of March 25, 1991, furnished by the seller of the Ryans account, represented either "the date of last payment or the last time the account was used." (*Id.* at 55–56.)

Hocking also submitted evidence showing that his violation was unintentional. In his affidavit, Hocking stated that he received both accounts from AAC, reviewed the files, and based upon the information provided by his client, determined that both accounts were within the statute of limitations. (Hocking Aff. ¶¶ 7, 9, Def. Hocking's Br. Supp.Mot.)

Plaintiffs have not come forward with any evidence to refute AAC's and Hocking's evidence showing that they were not aware until after the lawsuits were filed of the possibility that the statute of limitations had run. In fact, AAC's evidence, which Plaintiffs do not dispute, shows that prior to turning the accounts over to Hocking for collection, AAC contacted the Moyas and Ryans in writing about the debts. The Moyas did not respond and Ryans stated that he was unemployed and could not make payments. (Bradley Aff. ¶¶ 10, 12, Def. AAC's Br.Supp.Mot.) Neither plaintiff informed AAC that the debts were beyond the statute of limitations. Based upon this evidence, the Court finds no genuine issue of material fact that Defendants did not act intentionally.

AAC and Hocking have also submitted evidence regarding the procedures that they have adopted to avoid violations of the FDCPA. AAC has implemented ongoing training and testing to ensure that its employees are familiar with the requirements of the FDCPA. (*Id.* ¶ 4; Everly Aff. ¶ 8, Def. AAC's Br.Supp.Mot.) "AAC has a designated

training and compliance manager who oversees application and implementation of safeguards to ensure" compliance with the FDCPA. (Bradley Aff. ¶ 16, Def. AAC's Br. Supp.Mot.) Each account purchased by AAC is reviewed by AAC employees. If AAC receives information from a debtor disputing the amount owed or the validity of the debt, AAC requests backup information from the account seller to verify the debtor's information. (*Id.* ¶ 8.) AAC closes the account if the information is not available or confirms that the debtor is correct. (*Id.*) After collection efforts are exhausted, AAC's legal department reviews the account and, if the account is within the limitations period and no defense exists, refers the account to an outside attorney to file suit. (*Id.* ¶ 9.)

Hocking, as an attorney, has less detailed procedures. Each file that Hocking receives from AAC contains a form indicating that the account has been reviewed by an AAC representative. (Hocking Aff. ¶ 3, Def. Hocking's Br.Supp.Mot.) Prior to filing suit, Hocking reviews the form and the account information to confirm compliance with FDCPA requirements. (*Id.* ¶ 6.)

In *Smith v. Transworld Systems, Inc.*, 953 F.2d 1025 (6th Cir.1992), the Sixth Circuit held that the defendant debt collector established the due diligence defense with respect to two FDCPA violations, one based upon an internal clerical error and the other based upon erroneous information which the defendant received from its client. *Id.* at 1031–32. The defendant in *Smith* received the plaintiff's account from its client, Ryder Truck Rental, Inc., for collection, although the plaintiff had previously paid the balance in full. *Id.* at 1026. The referral form sent by the client stated that the debt was ten dollars more than the actual amount owed. *Id.* The defendant sent an initial collection letter to the plaintiff, and the plaintiff responded by sending a letter to the defendant's Columbus, Ohio office demanding that the defendant cease and desist from all further collection activities. *Id.* at 1026–27. One day after the

---

statute of limitations issue in the state court collection actions. Under Michigan law, an action on an open and mutual account accrues "at the time of the last item proved in the account." M.C.L. § 600.5831. Payment on an open and

mutual account renders the entire account open to suit, including time-barred charges. *See Hollywood v. Reed*, 55 Mich. 308, 310, 21 N.W. 313, 314 (1884).

plaintiff's letter was received in the defendant's Columbus office, the defendant's Rohnert Park, California office mailed the plaintiff a second collection letter. *Id.* at 1027. The plaintiff then sued the defendant under the FDCPA, and the district court dismissed the case, in part, on the basis that the defendant had established the bona fide error defense. *Id.* at 1028.

The Sixth Circuit affirmed the district court's finding on the bona fide error defense, holding that the defendant presented sufficient proof of its procedures to prevent inadvertent contact with debtors through two employee affidavits which established that the second collection letter was sent as a result of " 'a clerical error' " and a five-page instruction manual furnished by the defendant to its clients explaining the defendant's collection procedures. *Id.* at 1031 (quoting district court). More significant to the instant case, however, is the court's conclusion that the bona fide error defense applied to the $10.00 discrepancy between the amount reported by the defendant's client and the amount actually owed, despite the plaintiff's contention that the defendant should have conducted its own "independent investigation" of the debt to confirm its validity. *Id.* at 1032. The court observed:

the district court correctly concluded:

> The documents clearly reflect the fact that it was a clerical error on the part of defendant's client to refer plaintiff's account for collection, both as to the amount alleged as well as the fact that the debt had previously been paid. The defendant's referral form, completed and signed by Ryder, includes specific instructions to claim only amounts legally due and owing.

*Id.* The court concluded that "[b]ecause the [defendant] employ[ed] procedures reasonably adapted to prevent errors in amounts referred for collection, [the defendant] reasonably relied on the accuracy of" the information furnished by its client.[5] *Id.*

■ In the instant case, AAC and Hocking have both shown that they had reasonable procedures in place designed to prevent collection of accounts that were outside the statute of limitations. Like the defendant in *Smith,* AAC and Hocking both reasonably relied upon incorrect information furnished by third parties. *See Lewis v. ACB Bus. Serv., Inc.,* 135 F.3d 389; 401 (6th Cir.1998) (finding bona fide error defense applicable where defendant's client made error in coding account as "new" rather than as previously referred for collection). Based upon its review of the record, this Court concludes that "this case presents even stronger evidence to support the bona fide error defense than the evidence ... in *Smith.*" *Lewis,* 135 F.3d at 401. Here, AAC relied upon information it received from the account sellers, which the account sellers in turn received from the creditors. Under *Smith,* AAC and Hocking were entitled to rely on the account transaction dates as being accurate without having to conduct an independent investigation. *See* 953 F.2d at 1032; *Jenkins,* 124 F.3d at 834 (finding attorneys not required to investigate basis for charges on account referred for collection by client).

Plaintiffs cite *Narwick v. Wexler,* 901 F.Supp. 1275 (N.D.Ill.1995) (mem.op.), as being factually similar to the case at hand. The Court has reviewed *Wexler* and finds it factually dissimilar from this case in that the defendant's mistake in *Wexler*—suing the plaintiff in the wrong county—was caused by the defendant's own error rather than information furnished by a third party. *See id.* at 1282.

■ Plaintiffs argue that in spite of the information furnished by the account sellers, certain language contained in the account purchase agreements should have put AAC

**5.** Plaintiffs cite Judge Krupansky's partial dissent in *Smith* in support of their argument that Defendants' procedures were not reasonably designed to avoid the error at issue in this case. However, Judge Krupansky emphasized in his opinion that he took issue only with that portion of the majority's opinion finding that Transworld's procedures were reasonably designed to avoid mailing out collection letters after having received a cease and desist demand from the debtor. *See* 953 F.2d at 1036 (Krupansky, J, concurring in part and dissenting in part). Judge Krupansky wrote that he "concur[red] in the balance of the majority opinion," *id.,* which held that Transworld was not required to conduct an independent investigation of the information regarding the debt furnished by its client.

on notice that the Moya debt and the Ryans debt might have been uncollectible. Plaintiffs cite a provision from the agreement covering the Moya Account stating that AAC "understands and agrees that certain Receivables purchased hereunder may not be legally collectible." (Unifund CCR Partners Accounts Receivable Purchase Agreement ¶ 3(a), Pls.' Statement Of Material Facts Ex. C.) [6] Plaintiffs also cite two provisions from the agreement covering the Ryans account regarding the account seller's "best efforts to determine that the Accounts do not include any Ineligible Accounts" and AAC's representation to the seller that it "made an independent investigation" to the extent it deemed necessary regarding "the nature and value of the Accounts." (West Capital Fin. Servs. Purchase & Sale Agreement ¶¶ 3.2(b), 4.2, Pls.' Statement Of Material Facts Ex. G.) [7]

Plaintiffs' reliance on these provisions is misplaced. The cited provisions are part of agreements that have no bearing on AAC's compliance with the FDCPA. They are privately negotiated provisions that reflect the parties' desire to allocate between themselves the risk that certain accounts may be worthless for one reason or another. Plaintiffs' suggestion that a debt collector should be required to investigate every single account out of possibly hundreds or thousands that are purchased in a single transaction simply because a provision in the purchase agreement states that some of the accounts may be uncollectible would impose an unreasonable and unwarranted burden upon purchasers of accounts. Plaintiffs' argument is contrary to the FDCPA and Sixth Circuit precedent which allow a debt collector who has adopted reasonable procedures to prevent FDCPA violations to rely upon third party-supplied information.

One additional point is in order. The FDCPA provides for the exchange of information between debtors and debt collectors. *See* 15 U.S.C. § 1692g (providing thirty-day period for debtor to dispute debt in writing). This section " 'allows debt collectors to avoid the costs of investigating a debtor's background and ensures a cost effective means by which a debtor and debt collector can exchange information.' " *Lindbergh v. Transworld Sys., Inc.,* 846 F.Supp. 175, 179 (D.Conn.1994) (quoting *Hubbard v. National Bond & Collection Assoc.,* 126 B.R. 422, 428 (D.Del.1991)). AAC contacted the Moyas about their account but received no response at all. AAC also contacted Ryans about his

**6.** Paragraph 3(a) of the Unifund CCR Partners Accounts Receivable Purchase Agreement provides that

[AAC] understands and agrees that certain Receivables purchased hereunder may not be legally collectible. Within 180 days following Closing Date ... [AAC] shall submit to SELLER any and all Disqualified Receivables which shall be defined and shall be understood as Receivables in which the account debtor:
i) Had died on or before Closing Date, or
ii) Was subject to bankruptcy proceedings on or before Closing Date, or
iii) In which charges to the account were incurred by fraud and deceit, or
iv) Had paid, resolved, compromised or settled the account on or before the Closing Date.
(Unifund Accounts Receivable Purchase Agreement ¶ 3(a), Pls.' Statement Of Material Facts Ex. C.)

**7.** Paragraph 3.2(b) of the West Capital Financial Services Purchase And Sale Agreement provides in part:

Reimbursement of Accounts. Seller shall use its best efforts to determine that the Accounts do not include any Ineligible Accounts. If, within one hundred twenty (120) days following the Closing Date, it is determined that Ineligible Accounts were included in the Accounts purchase, then the Seller agrees, at Seller's option to, (I)[sic] reimburse the Buyer in an amount equal to Buyer's purchase price paid for the Account, or (ii) replace the account with one of equal value and in the same geographical area. In either case the replacement or substitution of accounts will take place immediately following the one hundred twenty (120) day period in a one time single bulk transaction.
(West Capital Fin. Servs. Purchase & Sale Agreement ¶ 3.2(b), Pls.' Statement of Material Facts Ex. G.) Paragraph 4.2 of the West Financial agreement provides:

*Investigation of Accounts.* [AAC] has made an independent investigation as [AAC] deems necessary as to the nature and value of the Accounts, and as to all other facts that [AAC] deems material to [AAC's] purchase. [AAC] enters into this Agreement on the basis of that investigation and [AAC's] own judgment. [AAC] has made an independent determination that the Purchase Price represents the Accounts' fair and reasonable value. [AAC] does not rely upon any representations or statements made to [AAC], if any, by Seller regarding the nature and value of said Accounts.
(*Id.* ¶ 4.2.)

account, and Ryans indicated that he could not pay the debt because he was unemployed. Neither the Moyas nor Ryans provided information to AAC suggesting that the debt may be time-barred. It appears that the Moyas simply chose to ignore AAC or, as is probably the case with Ryans, were not aware that the statute of limitations, if raised in a lawsuit as an affirmative defense, would have barred collection of the account. Given the fact that neither Plaintiff was trained in the law and would not have recognized a limitations defense, it is likely that their counsel first brought it to their attention after AAC initiated suit. In any case, the uncontradicted evidence shows that AAC complied with the procedures under the FDCPA and, due to no fault of its own, came up empty-handed. Left with that result, AAC's reliance on the information obtained from the next best source, the account sellers, was reasonable.

■ Therefore, the Court will grant Defendants' motions. The Court will also dismiss Plaintiffs' state law claim under the Michigan Collection Practices Act pursuant to 28 U.S.C. § 1367(c). *See Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254–55 (6th Cir.1996) ("[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims.")

### *Conclusion*

For the foregoing reasons Defendants' motions will be granted. Plaintiffs' state law claim will be dismissed without prejudice.